Next case is Daniel Triolo v. Nassau County. I understand that the attorney for Nassau County will be arguing remotely. Thank you. Thank you. Good morning, counsel. Good morning, ma'am and may it please the court. My name is Mitch Giselle and I represent Mr. and Mrs. Daniel Triolo. Today the jurors argued that jurors' punitive damages award precludes qualified injuries or granted. Additionally, the defendants cannot meet their heavy burden to show they are entitled to qualified immunity given the procedural posture of this case. Well, the jury found punitive damages, which I assume is willful behavior on the part of the Officer Lee, correct? Yes, Your Honor. Are you arguing that that forecloses qualified immunity? Yes, Your Honor. Do we have a case that says that? Your Honor, there's no case that directly says that punitive damages precludes qualified immunity in this circuit. However, under New York law, which applies to Mr. Triolo's state law claims, New York qualified immunity applies. And as this Court discussed in Moore v. City of Syracuse, New York law qualified immunity is both a subjective and objective component, meaning the defendant must show they actively subjected to it. The jury's finding of punitive damages encompasses a finding of facts, which is necessarily inconsistent with... What evidence is there in the record of malice or wantonness or recklessness? Yes, Your Honor. First, as this Court held in Rishi Lee... What evidence? I'm asking you about evidence. I'm not asking you about what we held. What evidence is there in the record that the officer acted in a malicious or wanton or reckless fashion? Yes, Your Honor. Deborah Triolo, the wife of Daniel Triolo, attempted to offer exculpatory evidence, photographic evidence of the events that occurred. He effectively rudely refused to consider any of that evidence. He effectively also deleted the accounts of two incredible witnesses who claimed that they were physically assaulted, hung by the neck, for 30 to 35 seconds, choked to the point of consciousness... The jury heard from all of these witnesses, didn't it? Yes, Your Honor. ...to disbelieve the people who filed the complaints. Yes, Your Honor. And given the procedural posture of this case, every fact and every inference therefrom should be taken in Mr. Triolo's favor. Additionally, the finding of punitive damages encompasses a finding of wantonness. In discussing wantonness, this Court and the United States Supreme Court have relied upon... I'm sorry. You said the wife attempted to offer exculpatory evidence. Our case law is clear that a police officer doesn't need to go and verify all the exculpatory evidence. You said there were two witness statements that also show malice? Yes, Your Honor. Both Patricia and Stephen Triolo gave inconsistent and incredible accounts. And Detective Lee took those accounts and faced that, or at least... So the mother – you're relying on the mother and the brother, and you're saying that their statements were not believable? Yes, Your Honor. Anything else in terms of malice, recklessness, or wantonness? Your Honor, Detective Lee himself said that he had doubts as to the veracity of Stephen Triolo's story. And that was the main story that was relied upon by Detective Lee in the U.S. And didn't the first officer who reported the event say no offense was committed? Yes, Your Honor. No offense was committed. It was marked off on the sheet. And Detective Lee saw that information before he proceeded with the arrest. Well, when you look at the sheet in its entirety, isn't it apparent that that was a mistake? I mean, the plaintiff wasn't even there. There were many other things noted on the form to show that, indeed, he had done some inappropriate things. Your Honor, at trial, it did come out that there would be no estimated box was a mistake. Detective Lee did not have that information. I know, but I'm putting aside his credibility, his testimony. But when you just look at the form and the indisputed facts, including that the plaintiff was no longer there to be arrested, isn't it apparent that the checking off of that one box was a mistake? Your Honor, the jury was not required to believe it was a mistake. The jury was not required to believe that Detective Lee did see the box. Could a reasonable juror have found that, in fact, the officer believed there was no basis for arresting the plaintiff when all these other things were noted on the form? Your Honor, a reasonable juror could have found that there was no basis for arresting the plaintiff based on what was on that form. In addition to the conflicting accounts given, which were apparent from the way the statement is attached to the form, a jury could have concluded that Detective Lee should not have arrested Mr. Trill. Was the jury charged about arguable probable cause? No, Your Honor. The jury was charged on the issue of probable cause, not arguable cause. So what should we make of that? In other words, you know, arguable probable cause is another means or way to determine that an officer is entitled to qualified immunity. Is arguable probable cause something that contradicts or conflicts with a jury determination on punitive damages? Yes, Your Honor. How? Because the juror's trial on punitive damages encompasses a finding of wantonness, which was in the jury disruption argument. Wantonness is defined as an objective finding that a person did not recognize rights that an objectively reasonable person would so recognize. That is inconsistent with the standards for arguable probable cause and qualified immunity, which requires objective reasonableness. Because of the inconsistency, technically, he cannot be entitled to qualified immunity. I don't know that I buy that, but okay. That's your argument. Continue. You're almost at the end of your time. In fact, your time has expired. Yes, Your Honor. An easy way to resolve this complex case is that no objectively reasonable officer would also recognize that a warrantless misdemeanor arrest in the current law is constitutional. And the record shows the detective. Mr. Patel, part of the reason, just to go back, but I don't know that I buy this as you started by describing New York law and the requirement of the subjective element. With respect to arguable probable cause, is there a subjective element? Your Honor, arguable probable cause is part of the federal standard of law. Yes, but that's what the district court judge determined existed here as a matter of law. Right. The district court did not address the state law qualifying immunity required for the need to be immune from the state law qualifying false arrest. And therefore, even if it is immune under federal law, the finding now is that it is not immune under state law. However, the finding was that this would be immune under both federal and state law. Okay. Thank you. We'll hear from your co-counsel, Professor Romberg. Good morning, Your Honor. John Romberg from Seattle Law School Center for Social Justice. Also representing the plaintiff. But co-counsel has explained why detective Lee is not entitled to qualified immunity. I will explain why. Even if you were entitled to qualified immunity, Nassau County remains vicariously viable on state law claim. Again, state law is different from federal Section 1983 claim. Both as to qualified immunity requiring subjective good faith inconsistent with malice. And also as to vicarious liability. Instead of monetary liability, what's required for vicarious liability under state law. It's a responsibility to carry more. Is there a case like this from the decision that resolves this from the New York Court of Appeals? There have been numerous Court of Appeals decisions and telecommissioned decisions that demonstrate that as a matter of responding to carry more. Two things which have to be combined in this case. One, that municipal employers are the same as any other employer. And that's under the New York Court of Claims Act Section 8 in Burger v. in the New York Court of Appeals. And then the second piece is that there are numerous cases including one of Nassau. There's also numerous telecommunications that say that as a matter of responding to carry more. An employer, which would include a municipal employer, is liable for the employee's conduct within the scope of employment. Could you explain how this works? I'm having a little trouble understanding. In other words, you're saying that under state law there's no immunity? I mean if there's a defense, what about the federal claim? Is that a defense to the federal claim as well, that what happens under state law? No. As to Triolo's Section 1983 federal claim, by case law I believe is not a crime. That claim, this is only for state law. This is only for the state law claim. That's what I'm trying to understand. Absolutely. Again, if Triolo's state law claim, his false arrest and work claim prevails and qualified immunity is unavailable, he wins regardless of his federal claim. Saying this is a vicarious liability for compensatory, not punitive damages, the state law claim for compensatory damages turns on responding to carry more. Municipalities, just like any other employer, are vicariously liable. So the county is not liable for the punitive damages portion, but for the compensatory damages portion. Correct. As any employer would be. Correct. That's your argument. And the reason any employer is liable is because numerous state courts have most of the Section 217 of the law of agency, and even before that, the Court of Appeals repeatedly held that even if an individual employee is personally immune, that does not immunize the employee. Where has it said that? So where has the new Court of Appeals said that precisely? You mentioned Judge Cardozo. Is there a more recent case? There's Rauch, which is one of the cases, and Schubert is the other case. Well, Schubert is the Cardozo case, so… Yes. Okay. Schubert is the Cardozo case, Rauch is the case, I believe, 58. Echoing Schubert, the Attell division citing Schubert and Section 217, the restatement of the agency. Are you familiar, Professor, with Cass v. City of New York? This is the case involving the Occupy Wall Street case where the lawyer was arrested and made a false arrest claim. I'm not sure what that means. Well, since I was on the panel, let me tell you a little bit about it. It concluded that the officer defendants in that case had arguable probable cause to arrest, and we dismissed the plaintiff's state law false arrest claim against the city, which was based solely on the allegation the city was responsible for any false arrest that was committed by the officers. It's saying that once the officers, we determined, were entitled to qualified immunity, then the city could not be vicariously liable. Right, so that was a district court case you're referring to. Well, that's a circuit court decision, ultimately. I don't believe that it affirmed on that basis. Okay. And the decisions that defendants cite to and the district courts cite to, there are a few district court cases that say, in passing, because the individual officer was entitled to qualified immunity, there's no vicarious liability. But if you look at those cases, two things are apparent. First, in those cases, the court found that the individual officer was not actually liable. There's one case, I believe it was Katz, where the court both said there was arguable probable cause and that there was probable cause. But the more important point is that this question as to New York qualified immunity is controlled by New York law, and cases such as Katz don't address controlling New York law. They simply announce a conclusion without any reasoning. I may not disagree with you on that. Right. And so New York law is less controlled in the fact that a district court arguably stated out a liability. So I'm a little troubled with great respect for Judge Justice Cardozo that you're asking us, in essence, to rely on a decision of the New York Court of Appeals from 1928. And I'm also puzzled that this issue of vicarious liability when an officer, the employee, is deemed to be entitled to qualified immunity hasn't recurred since 1928, or at least recurred in a way that the New York Court of Appeals grappled with it. So why shouldn't we certify? Good question. Because in Ravitch's 1957 or 58 report to the tech of that, I cite three appellate division cases, much more recent, that expressly look back to Schubert and that look to Section 217 of their statement of agency, which expressly says this is the majority rule. The First Circuit has held under Maine state law expressly holding that it's a matter of responding to a superior or a false arrest claim based on Maine state law that the qualified immunity does not minimize the municipality. This is plain law under governing New York law repeatedly, since Cardozo's opinion, repeatedly embraced by New York courts by their statement of agency by the First Circuit. And a straight sentence, which arguably suggests otherwise in a district court opinion, which doesn't even recognize that this is an issue of state law. And understandably, probably led astray by the fact that federal law is different. And that when that liability is required for the municipality to be liable, there is no responding to a superior court. But that's why this clear issue under state law, repeatedly embraced since then, controls the county's liability for compensatory damages on a state law claim. Even though its employee is immune from liability. And that's a significant, well beyond this case, a significant exposure to municipalities. So why am I relying on a 1928 decision to make that decision for the people of the state of New York? Because it's not solely a 1928 decision. And you've mentioned Rausch, but that's also not all that clear. There's nothing on all fours here, it seems to me. Respectfully, Your Honor, I believe it's not on all fours. It's, I would say, on all threes. What's clear under New York law, first, is that municipalities under Bergen and the New York Court of Claims Act, Section 8, are just as responsible as other employers. And then what's exactly on point is repeated appellate petition cases embracing Section 217 of the Restatement of Agency, which overtly states that if there is an employee who has personal immunity, that that immunity does not transfer to the employer. The employer is responsible for unlawful conduct, even if the employee is personally immune. And again, the First Circuit in Napier expressed that it is on all fours, held as a matter of state law, which grants respondents superior liability to municipality for a false arrest, that even if the officer is entitled to qualified immunity, the municipality remains liable as a matter of state law. The one piece that needs to be, or the two pieces that need to be connected, is that municipalities are liable just as with any other employer, combined with what's absolutely plain under New York law, that an employer is liable even if the individual employee's agent is immune. And I would suggest that both of those pieces are clear, and together they make the answer, in this case, clear, that a municipal employer is liable for compensatory, not punitive, damages for the state law claim, not the Federal 1983 claim, based on a false arrest. Thank you. You and your co-counsel have both retained one minute for rebuttal. We will hear from Nassau County. Good morning, Your Honor. Good morning. May I please report? I'm Jackie Grouse, County Court of the Appalachian Mississippi. I'm not sure exactly the order you would like me to address all the arguments, but I think maybe it makes sense to first discuss the punitive damages. And as far as that goes, I think that it's very clear that there are two very different and distinct activities, and that one is an objective test and one is a subjective test. And I think this case does not present any objectively reasonable decision that warrants punitive damages. The district court so found, and I think that it's clear here that this was not an officer who had any ill intent or bad faith. The jury did award punitive damages, but interestingly, if you go to the Cooper v. Leatherman Supreme Court decision on punitive damages, there's actually language in there that says specifically, a jury award of punitive damages is not a finding of fact. So that was for Seventh Amendment purposes. But I think that's an important point for the Supreme Court case. But counsel, you don't argue that the jury wasn't sorting correctly as to what they were required to find for punitive damages, correct? Correct, correct. I think it was Judge Chin, however, who asked the question of what is there in the record that shows one's recklessness or malice. But that aside, because I believe that's absolutely correct, this is not a bad officer. This is an officer who actually testified that it was a close call. This is one of those gray areas, and he wasn't sure, mostly because of lack of physical evidence. But the jury also heard that he didn't follow up with the Triolos, that Mrs. Triolo attempted to give him exculpatory information, and he rolled his eyes. He wasn't interested in that. That's what the jury heard, and the jury believed that. Are we in a position to disregard that verdict? Oh, absolutely not, and that's why they found there was no probable cause, and so they found that this officer was accused. They didn't find there was no probable cause, did they? Yes. There was probable cause. No, I think there wouldn't be a qualified immunity question if there was probable cause. There was not probable cause for that. We disagree. I understand you disagree, but the jury heard evidence that Officer Lee believed one side, didn't believe the other, and didn't do a fair investigation. That's what they heard, and that's the essence of their award of punitive damages, correct? Yes, and that's all after the arrest. Remember, Mr. Triolo was arrested, brought to criminal court, there were charges. But the jury heard that Mrs. Triolo tried to talk to Officer Lee before the arrest was consummated. She said, I have evidence. I have photographic evidence, and he rolled his eyes. He wasn't interested in hearing from her, and that was the essence of his unreasonable behavior. So the jury found. Correct, and that was at the time of arrest. This was an experienced detective who has had hundreds of domestic disputes. I think it's probably very common for arrestees or their families to say, I'm the victim. I'm not the one that was the bad guy here. I was the one that was injured here. I think that happens. So why, this is just Laurier, why didn't you move to dismiss the case or move for summary judgment on qualified immunity grounds? Why did you wait until trial? I wasn't the trial attorney. It obviously was a decision. I think that there were discussions, and I think that it was determined off the record in court at some point. I can't answer that. I'm sorry. I'm not understanding you. Would you repeat what you just said? I just said I can't answer why it wasn't a summary judgment motion or a motion to dismiss it and beyond before it went to the jury. I wish it was. But in any event, it did go to trial, and it did end up with a jury verdict. By awarding punitive damages, the jury must have found either malice or wantonness or recklessness. Why wouldn't that finding preclude qualified immunity? That's a subjective analysis. That's lay people making a determination that there was a bad act here. Juries do things, as we all know, for many different reasons, and there wasn't a specific finding that could be analysed. It just has to be implied, assumed. And as the Supreme Court said in the Leatherman case, that's not a finding of fact. If anything, it may be some sort of augmentation of the press report. It may be economic. Maybe it's punishing because they didn't like the detective. But that's not a finding of fact, per se. And it would be a very slippery slope for this court to find that once punitive damages are awarded, that's the end of the case, and there can be no qualified immunity. There is no such standard, and there should not be. In fact, we do have cases in Montgomery where there have been other instances where people with damages were awarded, and the officer is still entitled to qualified immunity. So I think that this is a perfect case of that. This was not an officer running out of control. This is an officer who actually consulted with other officers, superior officers, and in fact, the prosecutors often. That's conduct we want to encourage or discourage. Is that also, by the way, a matter of New York law? In other words, whether a finding by a jury of punitive damages is necessarily in conflict with the termination of qualified immunity? Again, as you said earlier, I don't think there's anything explicitly on point. New York law, though, does in fact, in some ways, give more protections for officers. There is the professional judgment rule, which I discuss at length in the brief, and there are, and the CAAS case. As I understand it, by the way, that professional judgment rule does not apply to police officers. Is that right or wrong? I think that, I disagree with that position. On what basis do you disagree? That there are cases where, in fact, it does apply to police officers, and I believe I cited them in my brief. It definitely applies to police officers. It's not a per se, we can't apply that. When they make tactical decisions, it's going to apply. Again, though, as you just said earlier, Your Honor, this is getting into the weeds somewhat of New York law. And be it, there's a question, defying supplemental jurisdiction, there are ways that the state courts rule on that. But in any event, I don't think it needs to go there, because I think this is clearly a case where, well, we actually believe there certainly was probable cause to arrest, and we disagree with the jury verdict on that. So let's say we agree with the district court and with you regarding arguable probable cause. Why shouldn't we certify the vicarious liability question to the New York Court of Appeals? Because I think that in this case, the facts do not warrant any kind of respondeat superior liability. I think that in this particular case, it's doing an end run around all of the settled law. And there is the Lubecki case that tactical decisions even before judgment. When you say doing an end run around all the settled law, you heard me speak or ask questions of your friends on the other side. And we've got a decision from Judge Cardozo from 1928 that seems to contradict your position. I would never say vicarious liability never applies to municipalities. I think there are instances where it does. Even in the context where the employee or the servant is found not liable or is otherwise immune. Well, I think there's no underlying tort liability here, and there are much more recent cases that say that. If there's no underlying liability, there can be no vicarious liability. What is the municipality going to be held liable for if there's no tort liability existing? Here, when you're talking about end runs, you're trying to do an end run around the jury verdict that found Officer Lee acted inappropriately, acted wantonly. Isn't that the case? That's an alternative argument, Your Honor, about probable cause. The qualified immunity never went to the jury. In fact, it was the plaintiff himself who requested that that be a question of law, that the judge decide. Why wasn't the jury asked? The plaintiff objected to them being the deciders of the qualified immunity. I don't understand your answer to my earlier, this is just Lillie again, your answer to my earlier question. Because as I understand it, the New York courts have more or less adopted the restatement of agency. And in that, so I'm looking at section 217, which says, in an action against a principal based on the conduct of a servant in the course of employment, the principal has no defense because of the fact that the agent had an immunity from civil liability as to the act. Am I misreading that? No, I recognize that, Your Honor. And I, too, see that language. I've seen it. But I do believe the more correct view here would be as you said. Well, when you say, well, let me stop you. The more correct view, is it correct that the New York courts have largely adopted the restatement of agency? Yes, Your Honor. That is absolutely correct. So when you say the more, this is the correct view. So tell me how you propose to get around that restatement, section 217. The cases that have been interpreted and have said no underlying court liability. I'm not saying they're not in conflict. I'm not saying they can be easily reconciled. And one more point, if I could bring up. This whole state law issue was not initially appealed by the plaintiff. That's another issue that I've briefed. It was only one of the supplemental briefings that came up. So once you do go there to the state law issue, again, Your Honor suggested certifying the question. You could define supplemental jurisdiction. It's totally in conflict. But I think your Cass case, which I believe were on the panel, as well as the Jenkins case, as well as the Hargraves case, they all are federal cases which say if the case is dismissed on qualified immunity grounds, then there is no vicarious liability against the plaintiff. Counsel, your time has expired. I'm sorry. Thank you. I'm sorry. You do not oppose certification per se on this issue. The government does not oppose. Well, consistently as you did in Cass, but. Well, rather than paying the verdict, you'd rather have. Right? Rather than paying the verdict now, you'd rather have. Correct. Yeah, thanks. Thanks very much. We understand that. We will hear from counsel for Triolo. Thank you, Mr. Court. The record did demonstrate sufficient evidence of a malice. From the actions in front of the court, this court has concluded the jury can infer malice. That's one basis for it. In addition to the facts about the no offense committed box being checked off, in addition to Lee saying that he arrested. What do you make of the argument that the officer consulted with three superior officers and a prosecutor and they all said you have enough to arrest? Your Honor, the fact that he consulted with other individuals does not relieve him of the responsibility to determine the probable cause before he was arrested. Well, it doesn't relieve him of the responsibility, but it certainly supports his thinking in terms of arguable probable cause. Your Honor, it's possible that he contributed to a subjective faith, but the jury does not require credit for that testimony. And in this procedural posture, with all factual inferences taken in Triolo's favor, the jury may have disbelieved what Triolo had said. In addition, New York law requires the defendant to prove subjective good faith affirmative. And in Lee's failure, regardless of generic damages, to prove subjective good faith means he cannot be entitled to qualify as a defendant. Thank you. Professor Rumberg on vicarious liability. So, as to vicarious liability, there's no need to certify the question to the Court of Appeals because the law is already abundantly clear under New York law, not just the 1928 case, but also the repeated television cases, as Your Honor recognized, which expressly embrace Section 217, and that those the counsel recognizes are directly clear. Her argument is that Lee is not liable, not at least entitled to qualified immunity. And I agree. If this Court were to overturn the jury's verdict and find that there was probable cause, then there's nothing to be vicariously liable for. But the question is, if Lee violated the law, however, assuming he was entitled to qualified immunity... My hesitation is that we're talking about qualified immunity for officers, law enforcement officials at the state level, and I haven't seen anything, and I understand 217 seems to generally be consistent with what you're saying, I just haven't seen anything that definitively says it. And this would potentially be of huge importance to New York State. So why should the three of us decide that as opposed to asking our friends in Midtown to resolve it for us? Because the law is clear. There's absolutely no question but that municipalities are subject to the same liability as any other employer under Bernardine, under the Affordable Claims Act, Section 8, that is not disputed. It's absolutely clear that municipalities are the same as any other employer. It's absolutely clear, as opposing counsels conceded, that other employers... As I understand it, Cass didn't directly address that issue. We did. Now, I would concede or acknowledge, speaking only for myself, that there was not a lot of explanatory power. But that's what we said. A panel is not bound on an issue that wasn't raised to it or briefed before it. And I would submit, on this issue of New York law, what matters is New York law, not what has been said or applied. Thank you. The final point is that a number of you have pointed out that the jury was not asked about article of probable cause. And that's a key to the case. The absence of a special interrogatory to the jury, which could have supported qualified immunity, which could have supported article of probable cause, was not asked. And, therefore, the facts must be assumed in the best possible light for Trudeau. So, article of probable cause, the district court's decision was grounded on a credibility determination of what an objectively reasonable officer could believe, which I should speak to in the story. That is a credibility-bound, factual decision that, if submitted to the jury, could have supported article of probable cause. Did you make the argument that this should – that arguable probable cause issues should have been charged to the jury? We were played by this court. Oh, well, no, you. I'm sorry. That I understand. But it was the argument made. But, of course, it's not Trudeau's obligation. It's the defendant's obligation. If they want to establish qualified immunity based on a factual finding, their obligation, as this court determined in Alavera and an entire line of cases says, is their obligation to put those factual special interrogatories to the jury. And if they fail to do so, then their failure – the district court is not allowed under the Seventh Amendment to step in and make those factual determinations. So the failure – that the absence of special interrogatories, the absence of the jury, are permanently determining that the act is subjected to good faith and a number of other issues. The failure of the jury to reach those factual questions compels the finding that there's no possible factual basis for qualified immunity for the – even apart from very tight case liability. Thank you. Thank you, Professor. And I want to thank Seton Hall Legal Clinic for appearing in this case. We appreciate the work you've done. Always. Thank you.